GOODMAN *et al. v.* JACOBS PACKING CO.

(*Nashville*, December Term, 1938.)

Opinion filed April 1, 1939.

HENRY C. FOUTCH and W. H. EAGLE, Assistant Attorneys-General, for appellant.

TRABUE, HUME & ARMISTEAD and THOS. O. H. SMITH, all of Nashville, and R. H. GEISELMAN, of Chicago, Ill., for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Jacobs Company sells in Nashville two packaged products known and labeled as Jelke's Good Luck Vegetable Shortening and Jelke's Good Luck Vitamin Fortifier. The shortening is made 100 per cent from cottonseed oil, and is apparently similar to brands known as Crisco, Spry, etc. The fortifier is a liquid composed of Vitamin "A" in cottonseed oil, and Vitamin "D" and other compounds, and is yellow in color. When mixed properly the result is what is known as oleomargarine, commonly used as a substitute for butter. While sold in separate packages, they are commonly, although not invariably, sold together and it is apparent that the products are manufactured by John F. Jelke Company, of Chicago, and sold to be used by the customer in making oleomargarine.

This bill was filed by Jacobs Company against Goodman, Commissioner of Agriculture, seeking a declaration as to the liability of complainant Jacobs for the tax levied by Chapter 19, section 10, Pub. Acts of 1931, of "ten cents per pound on all oleomargarine sold in this State as defined in section 2 of the Act." See sections 6546.10 and 6546.2 of Williams' Annotated Code. It was charged that the Commissioner's office had formerly ruled that this oleomargarine sale tax did not apply to sales of the products described, but that this ruling had recently been reversed and a controversy had thus arisen.

It was alleged, and the proof showed, that the Federal Commissioner of Internal Revenue had ruled that no such tax applied under a similar Federal law to a sale of the two packaged ingredients; but that tax applies when the mixture is made by any customer and sold in bulk, or served to paying guests. His report to Jelke Company reads in part as follows:

"In this connection you are advised that a sample of the two articles has been acquired by this office and analyzed, the result being that neither of the articles standing alone constitutes oleomargarine as defined by the law and regulations. The mere fact that the two articles are placed in the same package does not in itself constitute a sale of oleomargarine and no tax is incurred on the manufacture or sale thereof within the meaning of section 8 (a) of the Act of August 2, 1886, as amended by section 3 of the Act of May 9, 1902, and section 2 of the Act of March 4, 1931 [26 U. S. C. A., section 971 (a-c)]. However, your attention is invited to the fact that inasmuch as the two articles when mixed together constitute colored oleomargarine, the person mixing and serving the oleomargarine to paying guests will incur liability to the special tax as a manufacturer and to the commodity tax of ten cents per pound on the quantity mixed."

Rulings of like import are shown to have been made by the authorities in the States of Wisconsin, Iowa, Oklahoma, Nebraska, Minnesota, North Carolina, South Carolina, Georgia, Mississippi, Arkansas, California and Texas. The gist of these rulings is that obviously neither of the packaged products alone are oleomargarine, and that the tax on oleomargarine cannot apply until the mixture is made and oleomargarine produced and sold.

Proof was taken and substantially the facts above summarized developed. The Chancellor decreed that the tax did not attach to sales of these packages, whether separately sold or sold together, and the Commissioner appeals.

■ The theory of the Commissioner apparently is that a subterfuge is being employed to avoid the tax, and that the Court will look through the form to the substance of the transaction. This is a sound general rule, followed particularly in equity. However, the issue here does not turn primarily on purpose or intent. And if this were material, it is easily conceivable that the manufacturer here, by confining his sales to the essential and effective ingredients of oleomargarine, in non-perishable and easily marketable form, might avoid inconveniences. and disadvantages incident to handling oleomargarine in its consumable shape, and might find this plan more profitable.

■ Confusion has grown out of the failure of the State to distinguish this tax liability clearly from violations of the laws prohibiting the deceptive sale of substitutes for butter, with heavy penalties. In this class of cases subterfuge, collusion and deception become all important, and it is to this class of cases that many of the authorities cited on the brief for the State relate. Statutes relating to dealing in oleomargarine are directed, first, to prevention of fraudulent misrepresentations and, second, to taxation. Code, sections 6540, 6541 and 6542 are of the first class, and the Act of 1931, now before us, is of the second class. Here it is clear that no deception is practiced or attempted. On the contrary, the buyer is put clearly on notice of what he is buying. Deception of the buyer is not involved. The sole and determinative

question here is whether or not the sale of the articles described is a sale of oleomargarine, as defined by section 2 of the Act of 1931, which reads as follows:

"For the purpose of this Act certain *manufactured* substances, certain extracts, and certain *mixtures* and *compounds,* including such mixtures and compounds with butter, shall be known and designated as oleomargarine, namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, fish or fish oil, palm oil, vegetable oil, annetto, and other coloring matter, intestinal fat, and offal fat— if (1) made in imitation or semblance of butter, or (2) calculated or intended to be sold as butter or for butter, or (3) churned, emulsified, or mixed in cream, milk, water or other liquid, and containing moisture in excess of one per centum, or salt in any quantity whatsoever," etc. (Italics ours.)

We are constrained to agree with the Chancellor, and the cited rulings of the various State administrative officers, that while oleomargarine may be produced by mixing or compounding the ingredients contained in the packaged products described, that until so mixed and utilized and oleomargarine is thus produced the tax does not apply. A tax levied on the sale of cigarettes does not attach to a sale of tobacco and cigarette paper until cigarettes are formed therefrom and sold. A tax on the sale of ice cream does not attach to a sale of cream, sugar and ice, until the article known as ice cream is made and sold. Other illustrations might be given. It will be observed that in the first lines of the section above quoted it is the "mixtures and compounds" which shall

be "known and designated" as oleomargarine. If the legislature purposed to lay the tax on the sale of ingredients essential to and used in the manufacture, mixing or compounding of oleomargarine, apt language could be used. Such language does not appear here.

The tax levied is "ten cents per pound on all oleomargarine," etc., and provision is made for the affixing of stamps on the product. The practical difficulty of levying this tax, if it is to be applied to sales of packages such as described herein, supports the construction that we give the statute. It seems apparent that the legislature had in mind the finished, manufactured product in such form as to be weighed and stamped.

Affirmed.