Jacobs Packing Co. *et al. v.* Flanery.

(*Nashville,* December Term, 1940.)

Opinion filed June 14, 1941.

ARMISTEAD, WALLER, DAVIS & LANSDEN and THOS. O. H. SMITH, all of Nashville, and R. H. GEISELMAN, of Chicago, Ill., for complainants.

ROY H. BEELER, Attorney-General, and W. F. BARRY, HARRY PHILLIPS, and HENRY C. FOUTCH, Assistant Attorneys-General, for defendant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill seeks a construction of the Oleomargarine Act, Chapter 19, Public Acts of 1931, as amended by Chapter 71, Public Acts of 1941.

The Jacobs Packing Company sells two packaged products known and labeled as Jelke's Good Luck Vege-

table Shortening and Jelke's Good Luck Vitamin Fortifier. The former weighs twelve and the latter four ounces, so that when mixed by the purchaser a pound of yellow oleomargarine is produced.

This Court, in *Goodman et al.* v. *Jacobs Packing Company*, 174 Tenn., 399, 126 S. W. (2d), 309, 310, held that these two products did not come within the scope of the original Act. The Court said: "If the Legislature purposed to lay the tax on the sale of ingredients essential to and used in the manufacture, mixing or compounding of oleomargarine, apt language could be used. Such language does not appear here." The Legislature, in 1941, amended the original Act so as to bring these two products within its provisions. We here copy section 2 of the Act as amended, italicizing the new matter brought into this section by the amendment:

*"Be it further enacted,* That for the purpose of this Act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as oleomargarine, namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, fish or fish oil, palm oil, vegetable oil, annetto, and other coloring matter, intestinal fat, and offal fat—if (1) made in imitation or semblance of butter, or (2) calculated or intended to be sold as butter or for butter, or (3) churned, emulsified, or mixed in cream, milk, water or other liquid, and containing moisture in excess of one per centum, or salt in any quantity whatsoever. *This section shall apply to all ingredients essential to and used in the manufacture, mixing or compounding of oleomargarine. Nothing*

*in this Section shall be construed to mean that shortening shall come under this Act unless shortening or other similar compound of fats and/or oils is sold with or there is given away with shortening or other similar compound of fats and/or oils any article which when mixed with such shortening or other similar compound of fats/or oils makes oleomargarine as defined in this Act.* This Section shall not apply (1) to puff pastry shortening not churned or emulsified in milk or cream, and having a melting point of one hundred and eighteen degrees Fahrenheit or more, nor (2) to any of the following containing condiments and spices; salad dressing, mayonnaise dressing, or mayonnaise products, nor (3) to pharmaceutical preparations.''

The original Act not only included oleomargarine but numerous other substances of a kindred nature, the purpose of the Legislature being to embrace all products used as a substitution for and in competition with dairy butter.

The John J. Jelke Company, of Chicago, very ingeniously made it possible to evade the license fee and tax imposed by the original Act by producing the two ingredients referred to above, neither of which, in and of itself, was genuine oleomargarine, but which became such when mixed by the purchaser. The objective sought was obtained by shifting the mixing from the producer to the consumer.

The original Act does not undertake to define oleomargarine, and many of the enumerated products are not oleomargarine, although for the purpose sought to be accomplished by the Act and as a matter of convenience, they were designated as ''oleomargarine.'' By the amendment the Legislature added *''all ingredients essential to and used in the manufacture, mixing or com-*

*pounding of oleomargarine,"* thus using almost the exact language employed by this Court, by way of suggestion, in the opinion in the Goodman Case. To make the amendment more specific it was provided: *"Nothing in this Section shall be construed to mean that shortening shall come under this Act unless shortening or other similar compound of fats and/or oils is sold with or there is given away with shortening or other similar compound of fats and/or oils any article which when mixed with such shortening or other similar compound of facts and/or oils makes oleomargarine as defined in this Act."*

We think this language was intended to embrace and did embrace the two Jelke products, and the chancellor very properly so held.

Section 5 of the Act provides that every person desiring to manufacture, sell or offer for sale, or have in possession with intent to sell oleomargarine as defined in section 2 of the Act, shall obtain a license for that purpose paying the fees enumerated therein. In view of the construction we have placed on Section 2, it is manifest that complainants are liable for such license fee, and the decree of the chancellor in so holding is affirmed.

Section 10 provides *"that there is hereby levied a tax of ten cents per pound on all oleomargarine sold in the State as defined in Section 2 of this Act which is yellow in color, irrespective of the types or kinds of fats or oil ingredients contained by such yellow oleomargarine, any other provision of this Act to the contrary notwithstanding."*

Construing this section, the chancellor held that complainants were only liable for this tax when they produce the oleomargarine by mixing the two ingredients. This, in our opinion, is contrary to the legislative intent. No

good reason occurs as to why the numerous other products should be taxed and the Jelke products exempted. The theory of complainants is that the tax only attaches to yellow oleomargarine, and that it does not attain this status until it is mixed by the consumer. It will be recalled that section 2, as amended, specifically embraces any two ingredients which when mixed produce oleomargarine. This is exactly what occurs when the two Jelke products are mixed; so that these two products, under the provisions of section 2, are oleomargarine even before they are mixed. And, being oleomargarine, they are of a yellow color, because that color only can be produced by mixing them. It follows that these products are subject to the tax of 10 cents per pound because, by the amendment, they are made yellow oleomargarine. Counsel for complainants fail to distinguish the difference between "oleomargarine" as embracing a class of substitutes for butter solely for the purpose of this particular Act and genuine or real "oleomargarine" as that word is defined by lexicographers. While, as stated in the *Goodman Case*, these two Jelke ingredients were not included in the class of products constituting oleomargarine, it was plainly indicated in the opinion that they could be so included, and this is exactly what the Legislature intended to and did accomplish by the amendment.

We are further of the opinion that the chancellor was in error in holding that those engaged in selling these two Jelke compounds were not subject to the regulations imposed by section 3 and 3-A of the amended Act, with the exception of the requirement that the word "oleomargarine" shall be branded in conspicuous color on the top, sides and bottom of every tub, firkin, box or package containing oleomargarine. As to this latter

regulation the parties are in accord; hence it is unnecessary to deal further with it.

With respect to the other regulations, it seems that the Jelke Company is substantially complying therewith; but if not, the requirements as to advertising, vitamin content, inspection, etc., are reasonable regulations under the police power of the State.

For the reasons stated herein, the errors assigned on behalf of complainants are overruled and those assigned on behalf of defendants are sustained. The decree of the chancellor, except as modified herein, is affirmed. Complainants will pay all costs.